Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000398
30-OCT-2015
09:22 AM

NO. CAAP-12-0000398

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DENNIS T. IHARA, Claimant-Appellee, Cross-Appellant,
v. STATE OF HAWAII, DEPARTMENT OF LAND & NATURAL
RESOURCES, Employer-Appellant, Cross-Appellee, Self-Insured

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2008-266 (2-07-40277))

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard, J.; and
Circuit Judge Kuriyama, in place of Nakamura, C.J., and
Fujise, Reifurth, and Ginoza, JJ., all recused)

Employer-Appellant, Cross-Appellee, State of Hawai'i,
Department of Land and Natural Resources (**DLNR**) appeals from the
Labor and Industrial Relations Appeals Board's (**LIRAB's**) Decision
and Order filed March 13, 2012 (**March 13, 2012 Decision**). The
DLNR challenges the LIRAB's award of $250.00 in permanent partial
disability (**PPD**) benefits and its determination that the DLNR is
liable for vocational rehabilitation (**VR**) services. Claimant-
Appellee, Cross-Appellant Dennis T. Ihara (**Ihara**) cross-appeals
from the March 13, 2012 Decision as well, claiming that the LIRAB
erred in failing to assess a 20% penalty against the DLNR for
failure to timely pay temporary total disability (**TTD**) benefits.
Ihara also appeals the LIRAB's Attorney's Fee Approval and Order
filed April 23, 2012.

I.    BACKGROUND FACTS

On April 3, 2007, the DLNR filed a WC-1:  Employer's Report of Industrial Injury based on Ihara's claim that he suffered from increased hypertension and stress due to the pressures of his job as Deputy Registrar at the Bureau of Conveyances.  Ihara asserted that his injury occurred on approximately February 1, 2007.  In support of Ihara's claim, Ihara's physician, Dr. Ronald A. Morton (**Dr. Morton**), submitted a letter stating that Ihara had been in reasonably good health with controlled hypertension but that work stress had recently caused a marked elevation in his blood pressure.  The DLNR, through its workers' compensation insurance carrier, denied liability pending investigation of Ihara's claim.

An Independent Medical Examination (**IME**) was performed by Dr. Ajit Arora (**Dr. Arora**) on May 15, 2007.  Dr. Arora's report dated May 21, 2007 diagnosed Ihara with "Essential hypertension, genetically based, with temporary aggravation."

An Independent Psychiatric Examination (**IPE**) was performed by Dr. Jon Streltzer (**Dr. Streltzer**) on June 6, 2007. In a report dated June 19, 2007, Dr. Streltzer diagnosed Ihara with, among other things, Adjustment Disorder with Anxiety, Primary Insomnia, Occupational Problem (not a mental disorder), and High Blood Pressure.

Based on Dr. Arora's and Dr. Streltzer's IME and IPE, the DLNR accepted compensability for Ihara's claim as a temporary aggravation.  Ihara was instructed to have his medical providers submit reports and statements of their services to the Department of Human Resources Development, State Workers' Compensation Division.  Ihara submitted various notes from Dr. Morton and psychiatrist Dr. Dennis Lind (**Dr. Lind**) excusing him from work and stating that he was disabled for certain dates.  However, the claims manager of the Department of Human Resources Development, Employee Claims Division (**ECD**), then wrote to Drs. Morton and Lind requesting clarification as to the reasons for Ihara's disability on certain dates in light of the reports by Drs. Streltzer and Arora that Ihara was able to perform his job

2

duties. The ECD also wrote to Dr. Arora for an opinion as to whether treatment by Dr. Morton was still necessary and if the drug Atenolol prescribed by Dr. Morton was necessary to control Ihara's blood pressure. Additionally, Dr. Streltzer was also contacted and asked whether he agreed with Dr. Lind's assessment that Ihara was unable to return to work and whether anything might explain the deterioration in Ihara's condition that Dr. Lind mentioned.

Dr. Streltzer submitted a supplemental report dated September 27, 2007. Dr. Streltzer noted that a review of Ihara's records indicated that he had been put on leave without pay with his last day at work being June 12, 2007. Dr. Streltzer wrote that, in terms of treatment:

> Ideally, communication with the Employer should be made in order to determine if there are circumstances in which Mr. Ihara will be accepted back at his job and allowed to do his work. If this is accomplished and the employer would like to have him back, it is likely that he will be able to return to full-time duty with perhaps the only restriction being the need for flexible hours due to his sleep disturbance. If it is not possible to come to an agreement with the Employer, then alternative employment will have to be sought. When such alternative employment is obtained, it is likely that Mr. Ihara's anxiety symptoms will substantially improve.

Dr. Arora submitted a supplemental report dated October 19, 2007 opining that Ihara's hypertension was no longer an issue and should not have been considered a labor disabling condition. He deferred to Drs. Streltzer and Lind as to Ihara's psychiatric condition.

In addition to claiming eligibility for TTD benefits, Ihara also claimed eligibility for VR services. On October 16, 2007, the ECD formally objected to Ihara's eligibility for VR services and on November 5, 2007, the ECD requested a hearing before the Department of Labor and Industrial Relations (**DLIR**), Disability Compensation Division on the issue.

Dr. Arora submitted another supplemental report to ECD dated November 29, 2007. In this report, Dr. Arora wrote:

> 1. Mr. Ihara had a temporary exacerbation of his pre-existing non-industrial hypertension due to emotional distress associated with occupational environment.
>
> 2. The temporary exacerbation ended on 08/30/07.

3. No further treatment for hypertension is indicated on industrial basis as of 08/30/07.

Based on Dr. Arora's reports, the ECD notified Dr. Morton and Ihara that its position was that Ihara's temporary exacerbation of his hypertension ended on August 30, 2007 and that "no further treatment for his hypertension is indicated on an industrial basis."

In addition to the issues requested by the ECD to be heard by the DLIR, Ihara requested that the DLIR also hear the issues of "(1) compensability; (2) TTD benefits; and, (3) medical expenses[.]" A hearing was held in front of a hearings officer of the DLIR on March 18, 2008. In the DLIR's Decision filed May 7, 2008 (**May 7, 2008 Decision**) stated:

> 1. Pursuant to Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services and supplies as the nature of the injury may require.
>
> 2. Pursuant to Section 386-31(b), HRS, said employer shall pay to claimant weekly compensation of $630.72 for temporary total disability beginning (waiting period: 6/12/2007 through 6/14/2007; 6/15/2007 through 6/17/2007; 8/2/2007 only; 8/10/2007 through 10/16/2007; 10/28/2007 through 11/30/2007; 3/13/2008 through 4/15/2008 for 20.0000 weeks, for a total of $12,614.40. Additional temporary total disability, if any, shall be paid upon receipt of medical certification.
>
> 3. Pursuant to Section 386-25, HRS, claimant remains eligible for Vocational Rehabilitation services.
>
> 4. The matter of the employer's responsibility for the prescriptive drug, Atenolol, is held in abeyance until clarification is received from Ronald Morton, M.D.
>
> 5. The matters of permanent disability and/or disfigurement, if any, shall be determined at a later date.

The DLNR appealed the Decision to the LIRAB on May 23, 2008. The DLNR also filed a Motion for Stay of Payments, which was rejected.

On June 19, 2008, the ECD wrote to Drs. Lind and Morton for their opinions as to whether Ihara could return to work. Dr. Lind responded on June 25, 2008 that Ihara had reached medical stability and could work in other situations, but not the DLNR, due to the work environment. Dr. Morton responded on June 27, 2008 that Ihara could return to regular duty work and had reached medical stability.

4

On July 11, 2008, the DLNR discharged Ihara from his position with the Bureau of Conveyances via letter. The DLNR's termination letter stated: "Based on Dr. Lind's current medical assessment that you 'can work other situations - just not DLNR', we find that you are medically disqualified for continued civil service employment in Position Number 00137, Deputy Registrar of the Bureau of Conveyances and any DLNR employment." Ihara had not yet finished his probationary period at the time of the discharge.

Throughout the pendency of this case, Dr. Lind submitted multiple treatment plans to the ECD. The latest treatment plan was dated December 13, 2008. However, a psychiatric IME had been conducted, at the request of the DLNR, by Dr. Danilo E. Ponce (**Dr. Ponce**) on October 11, 2008. Dr. Ponce concluded that Ihara "reached full clinical remission, with no discernible residual, permanent psychiatric impairment[,]" and that treatment with Dr. Lind was no longer necessary. Based on Dr. Ponce's opinion, the DLNR rejected Dr. Lind's December 13, 2008 treatment plan.

On June 9, 2009, Ihara and the DLNR submitted a stipulation for temporary remand agreeing to have the case remanded to the DLIR Disability Compensation Division to address the following issues:

> (1) Claimant's entitlement to and the period of temporary total disability benefits; (2) Claimant's entitlement to the medication, Atenolol; (3) the continuation or closure of vocational rehabilitation services with Alan S. Ogawa; (4) the nature and extent of permanent partial disability, if any; and (5) the extent of disfigurement, if any.

A hearing was held on September 22, 2009. A supplemental decision was issued on October 28, 2009, stating:

> 1. Pursuant to Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services, and supplies as the nature of the injury may require.
>
> 2. Pursuant to Section 386-31(b), HRS, said employer shall pay to claimant weekly compensation of $630.72 for temporary total disability beginning 4/16/2008 through 5/15/2008; and 8/31/2008 through 8/17/2009.
>
> 3. Pursuant to Section 386-32(b), HRS, said employer shall pay to claimant weekly compensation for temporary partial

disability from work beginning 5/16/2008 through 6/24/2008; and 7/1/2008 through 8/30/2008.

4. Pursuant to Section 386-92, HRS, the employer shall pay an additional 20% to the above noted payments for temporary total and temporary partial disability.

5. Vocational Rehabilitation services shall cease effective 8/17/2009.

6. The treatment plan of Dennis Lind, M.D., dated 12/13/2008 is hereby denied.

7. No permanent disability or disfigurement resulted from this accident.

8. This case is hereby transmitted back to the Labor and Industrial Relations Appeals Board for a hearing and determination of all issues on appeal.

Both Ihara and the DLNR appealed from the DLIR's October 28, 2009 supplemental decision. The LIRAB granted a Motion for Stay of Payments.

A trial was scheduled before the LIRAB for April 8, 2011. On March 13, 2012, the LIRAB issued its Decision and Order affirming in part, reversing in part, and modifying in part the DLIR's May 7, 2008 Decision and October 28, 2009 supplemental decision. The LIRAB made several Findings of Fact (**FOF**) and Conclusions of Law (**COL**) including, *inter alia*:

[FOF 20:] The Board credits Dr. Ponce's opinion regarding further treatment and finds that the treatment, requested in Dr. Lind's December 13, 2008 was not reasonable and necessary for, or required by the nature of, Claimant's February 1, 2007 work injury.

. . . .

[FOF 35:] The Board finds that Claimant was medically stable as of June 27, 2008.

[FOF 36:] . . . The Board finds that Employer's statement that Claimant was "medically disqualified" for his position was an admission or acknowledgment that Claimant was permanently disabled. The Board finds this to be especially so, because Employer sought out and received opinions of medical stability from Drs. Morton and Lind before it sent this letter.

[FOF 37:] The Board credits the opinions that Claimant sustained no ratable impairment. However, Employer's July 11, 2008 letter admitted or acknowledged permanent disability, stated that Claimant was "medically disqualified" for his position, and terminated him therefrom. Therefore, the Board finds that Claimant sustained permanent partial disability in the amount of $250.00.

6

. . . .

[COL 1:] Pursuant to Section 386-31, HRS, the Board concludes that Claimant's period of temporary total disability, resulting from the February 1, 2007 work injury, was as follows:
Waiting period: June 12, 13, 14, 2007
June 15, [2]007 - June 18, 2007
August 2, 2007
August 10, 2007 through October 8, 2007 [1]
The Board further concludes that Claimant was entitled to, and Employer liable for, VR-TTD benefits, pursuant to Section 386-25(d), HRS, for the period October 8, 2007 through August 17, 2009, with appropriate adjustments and reductions for wages Claimant earned during that period.
The Board makes no determination as to whether Claimant is entitled to further TTD benefits or VR-TTD benefits after August 17, 2009. Said issues are to be determined by the Director, in accordance with the findings and conclusions herein.

[COL 2:] The Board concludes that Claimant was not entitled to, and Employer was not liable for, temporary partial disability ("TPD") benefits as a result of the February 1, 2007 work injury.

. . . .

[COL 3:] The Board concludes that Claimant is not entitled to, and Employer is not liable for, a 20% penalty on TTD. Furthermore, because the Board has concluded that Claimant was not entitled to, and Employer was not liable for, TPD, a fortiori Employer is not liable for a 20% penalty on TPD.

[COL 4:] Employer requested opinions of medical stability from Drs. Morton and Lind. By July [sic] 27, 2008, both physicians informed Employer of their opinions that Claimant was medically stable and, therefore, no longer in a state of "temporary" disability. Rather, Claimant was at the "permanent" stage of recovery.
By its July 11, 2008 letter, Employer admitted or acknowledged that Claimant was "medically disqualified," which, as noted above, the Board interpreted to be an admission or acknowledgment of permanent disability.
There is no requirement in the statute that permanent partial disability be expressed either in weeks or in

---

1     Although the LIRAB concluded that Ihara was entitled to TTD for these periods, in its FOF 21 and 22, it held that, because Ihara earned income after the work injury as an adjunct professor for Hawaii Pacific University, he was not entitled to TTD benefits for the periods of:

December 16, 2007 - December 31, 2007
January 1, 2008 - January 15, 2008
January 16, 2008 - January 31, 2008
February 1, 2008 - February 15, 2008
May 16, 2008 - May 27, 2008
May 28, 2008 - June 15, 2008
June 16, 2008 - June 30, 2008
July 1, 2008 - July 15, 2008
July 16, 2008 - July 31, 2008
August 1, 2008 - August 15, 2008
August 16, 2008 - August 31, 2008.

percentages. Therefore, given the unique circumstances of this case, particularly Employer's admission or acknowledgment of medical disqualification or permanent disability, the Board concludes that Claimant is entitled to, and Employer is liable for, benefits for permanent partial disability in the amount of $250.00, as a result of the February 1, 2007 work injury.

[COL 5:] Given the foregoing determination that Claimant is entitled to, and Employer is liable for, benefits for permanent partial disability, the Board further concludes that Claimant is entitled to, and Employer is liable for, vocational rehabilitation services as a result of the work injury of February 1, 2007.

[COL 6:] Claimant's VR services were terminated based upon a determination by the VRU that Claimant would not have impairment due to the work injury.
Employer's documented admission or acknowledgment of permanent disability and its termination of Claimant because of his "medical disqualification" leads the Board to conclude that Claimant is entitled to VR services after October 20, 2008 and through at least August 17, 2009.
The Board leaves to the Director the determination of Claimant's entitlement to VR after August 17, 2009.

[COL 7:] The Board concludes that Claimant is not entitled to, and Employer is not liable for, medical care, services and supplies pursuant to Dr. Dennis Lind's December 13, 2008 treatment plan because such treatment is not reasonable and necessary for, and not required by the nature of, Claimant's February 1, 2007 work injury.

The DLNR timely filed a Notice of Appeal on April 11, 2012. Ihara timely filed a Notice of Cross-Appeal on April 25, 2012.

On April 23, 2012, the LIRAB filed an Attorney's Fee Approval and Order finding that the DLNR was the prevailing party "on the crucial issue of permanent partial disability" on appeal and ordering Ihara responsible for $13,905.74 in attorney's fees, applicable taxes, and costs. Ihara timely appealed the award of attorney's fees.

II. POINTS OF ERROR ON APPEAL

The DLNR challenges the following FOFs and COLs in the LIRAB's March 13, 2012 Decision:

(1) FOF 36: "Employer's statement that Claimant was 'medically disqualified' for his position was an admission or acknowledgment that Claimant was permanently disabled."

(2) FOF 37: "Employer's July 11, 2008 letter admitted or acknowledged permanent disability, stated that Claimant was 'medically disqualified' for his position, and terminated him

therefrom. Therefore, the Board finds that Claimant sustained permanent partial disability in the amount of $250.00."

(3) COL 4: "There is no requirement in the statute that permanent partial disability be expressed either in weeks or in percentages. Therefore, given the unique circumstances of this case, particularly Employer's admission or acknowledgment of medical disqualification or permanent disability, the Board concludes that Claimant is entitled to, and Employer is liable for, benefits for permanent partial disability in the amount of $250.00, as a result of the February 1, 2007 work injury."

(4) COL 5: "Given the foregoing determination that Claimant is entitled to, and Employer is liable for, benefits for permanent partial disability, the Board further concludes that Claimant is entitled to, and Employer is liable for, vocational rehabilitation services as a result of the work injury on February 1, 2007."

(5) COL 6: "Employer's documented admission or acknowledgment of permanent disability and its termination of Claimant because of his 'medical disqualification' leads the Board to conclude that Claimant is entitled to VR services after October 20, 2008 and through at least August 17, 2009."

On cross-appeal, Ihara challenges FOF 32 and COL 3 in the LIRAB's March 13, 2012 Decision, which state:

(1) FOF 32: "The Board finds no credible evidence to support an assessment against Employer of a 20% penalty for untimely TTD benefit payments."

(2) COL 3: "The Board concludes that Claimant is not entitled to, and Employer is not liable for, a 20% penalty on TTD. Furthermore, because the Board has concluded that Claimant was not entitled to, and Employer was not liable for, TPD, *a fortiori* Employer is not liable for a 20% penalty on TPD."

Ihara also challenges the LIRAB's Attorney's Fee Approval and Order filed April 23, 2012, arguing that:

(3) The LIRAB erred in finding that DLNR was the prevailing party for purposes of an attorney's fee award.

(4) The LIRAB erred in ordering that "the total amount of $13,905.74 for attorney's fees, applicable taxes, and costs are approved. The approved sum is made a lien upon compensation payable by Employer. Claimant is otherwise responsible for payment of the approved amount."

III. APPLICABLE STANDARDS OF REVIEW

Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have previously stated:

FOFs are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.

COLs are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.

A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

Igawa v. Koa House Rest., 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (citations, internal quotation marks and brackets in original omitted) (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

> An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Water Use Permit Applications, 94 Hawai'i at 119, 9 P.3d at 431 (citations and internal quotation marks omitted).

> [An appellate court] generally reviews questions of statutory interpretation *de novo*, but, in the case of ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires [courts] to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous[.]

Gillan v. Gov't Emps. Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008) (citations, internal quotation marks, brackets, and ellipses omitted).

IV.  DISCUSSION

   A.    The PPD Benefits

   Hawaii Revised Statutes (HRS) § 386-32(a) (1993 & Supp. 2014) includes a list of specific disabilities and provides a schedule of benefits for these disabilities, calculated as the effective maximum weekly benefit rate prescribed in HRS § 386-31 (1993 & Supp. 2014)[2] multiplied by the number of weeks specified for the disability.  However, for disabilities which are not listed, HRS § 386-32(a) states that benefits shall be calculated as follows:

> Other cases. In all other cases of permanent partial disability resulting from the loss or loss of use of a part of the body or from the impairment of any physical function, weekly benefits shall be paid at the rate and subject to the limitations specified in this subsection for a period that bears the same relation to a period named in the schedule as the disability sustained bears to a comparable disability named in the schedule. In cases in which the permanent partial disability must be rated as a percentage of the

---

[2]   Under HRS § 386-31, the maximum weekly benefit rate is calculated as follows:

> Beginning January 1, 1975, and during each succeeding twelve-month period thereafter, not more than the state average weekly wage last determined by the director, rounded to the nearest dollar, nor less than $38 or twenty-five per cent of the foregoing maximum amount, rounded to the nearest dollar, whichever is higher.

> total loss or impairment of a physical or mental function of
> the whole person, the maximum compensation shall be computed
> on the basis of the corresponding percentage of the product
> of three hundred twelve times the effective maximum weekly
> benefit rate prescribed in section 386-31.

(Emphasis added.)

Ihara's alleged disabilities, *i.e.*, hypertension and various mental health issues, are not comparable to any scheduled disability. Thus, the underlined section of the statute applies. In its FOFs, the LIRAB explicitly stated that Ihara was medically stable as of June 27, 2007 and it credited the opinions that Ihara sustained no ratable impairment. It is unclear whether the LIRAB meant that Ihara suffered no impairment or whether it determined that he had suffered some impairment, but in an amount incapable of being measured.[3] However, following either interpretation, the LIRAB's subsequent determination that Ihara was entitled to $250 in PPD benefits appears to be in error.

If the LIRAB's conclusion was that Ihara suffered no impairment, then its interpretation of HRS § 386-32(a) was erroneous because a PPD award requires a finding that there is some mental or physical impairment. HRS § 386-1 (1993 & Supp. 2014), which sets forth the definitions used in Chapter 386, the Workers' Compensation Law, defines a disability as "loss or impairment of a physical or mental function." The definition of disability has not changed since it was first introduced in 1963. At that time, the legislature wrote: "A definition of <u>disability</u> has been added so as to make clear that disability means bodily impairment and not impairment of earning power. The basis of compensability in Hawaii is loss of physical or mental functioning, regardless of whether or not it entails loss of earnings." S. Stand. Comm. Rep. No. 334, in 1963 Senate Journal, at 789. Thus, if the LIRAB determined that Ihara had no physical

---

[3] In support of the interpretation that the LIRAB found that Ihara suffered no impairment is its FOF 13 which states that "Dr. Ponce opined that Claimant had no permanent psychiatric impairment." In support of the interpretation that the LIRAB found Ihara suffered from some impairment, but not in a ratable amount, is FOF 16 which states that "Dr. Lind opined that Claimant had reached maximum medical improvement and had permanent impairment that was more than zero."

or mental impairment, it could not have determined that he was entitled to PPD benefits.

Further, in awarding PPD benefits, the LIRAB was not entitled to simply rely on the DLNR's statement that Ihara was "medically disqualified" from continuing employment at the Bureau of Conveyances as a substitute for a finding of some impairment. The legislative intent of HRS § 386-32(a) makes clear that PPD is solely based on a claimant's physical or mental impairment and not on his ability to work.

In Cuarisma v. Urban Painters, Ltd., 59 Haw. 409, 583 P.2d 321 (1978), the Hawai'i Supreme Court rejected the argument that benefits for disfigurement, which is classified as a type of PPD under HRS § 386-32(a), are intended to compensate for presumed loss of wage-earning capacity. Instead, it found that the legislature had intended to relate disfigurement benefits to the amount of impairment of bodily integrity. Id. at 421, 583 P.2d at 321. Cuarisma limited its holding to disfigurement awards and not other forms of PPD.[4] Id. at 413, 583 P.2d at 323-24. However, it noted that, in revising HRS § 386-32 in 1969, the House Committee on Labor and Employment had stated that: "Permanent partial disability compensation is an indemnity payment for the loss or impairment of a physical function and, unlike temporary total disability benefits, is not compensation to replace current loss of wages." Id. at 420, 583 P.2d at 327 (quoting H. Stand. Comm. Rep. No. 193, in 1969 House Journal, at 702).

Though Cuarisma only documents the history of HRS § 386-32 up to 1969, the subsequent history of the statute strengthens the conclusion that awards for PPD are meant to be

---

[4] Note however, that the supreme court in Tabieros v. Clark Equipment Co., 85 Hawai'i 336, 389, 944 P.2d 1279, 1332 (1997) characterized Cuarisma as standing for the proposition that "within the context of a permanent partial 'disability,' the degree of 'impairment' is important in determining workers' compensation for an injury even if it is unrelated to future working capacity." Also note that a concurring opinion in Capua v. Weyerhaeuser Co., 117 Hawai'i 439, 452, 184 P.3d 191, 204 (2008) (Acoba, J., joined by Nakayama, J., concurring) would narrowly construe Cuarisma and hold that "there is no authority for the propositions . . . that PPD benefits are 'not compensation to replace loss of wages' . . . ."

based on the extent of a claimant's impairment and not on his wage-earning capacity or ability to work. In 1970, the language in the paragraph in HRS § 386-32(a) referring to "other cases" of PPD was revised to read: "In cases in which the permanent partial disability must be rated as a percentage of <u>total loss or impairment of physical or mental function of the whole man</u> the maximum compensation shall be computed on the basis of the corresponding percentage of $35,100." 1970 Haw. Sess. Laws, Reg. Sess., Act 100, § 1 at 180 (emphasis added). Previously, the statute had read "In cases in which the permanent partial disability must be rated as a percentage of <u>total disability</u> the maximum compensation shall be computed on the basis of the corresponding percentage of $35,100." H. Stand. Comm. Rep. No. 418-70, in 1970 House Journal, at 976. In explaining its reasoning for the change, the legislature wrote:

> There has been some confusion in the application of the provision above because of other language in the law. While "disability" is defined as "loss or impairment of a physical or mental function," "total disability" is defined as "disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market." . . . <u>Permanent partial disability compensation payments under the law, however, are based primarily on impairment of physical or mental function and not on ability for work.</u> To avoid a possible confusion, the proposed amendment, which would make it clear that <u>the amount of permanent partial disability compensation awarded an injured worker is not dependent on his ability to work</u>, should be enacted.

<u>Id.</u> (emphasis added); <u>see also</u> S. Stand. Comm. Rep. No. 867-70, in 1970 Senate Journal, at 1391. Besides the substitution of the word "man" for "person," the changes enacted by Act 100 in 1970 remain in effect today. Although HRS § 386-32 has been revised several other times since 1970, a review of the amendments and corresponding legislative history reveals no contradiction to the legislature's intent as expressed above.

Ihara argues that a claimant's ability to work "must be considered by the LIRAB in determining 'disability.'" This argument appears to be based on the American Medical Association's <u>Guides to the Evaluation of Permanent Impairment</u> (**AMA Guides**) which classify "disability" as broader than

"impairment." A "disability" is defined in the AMA Guides as "an alteration of an individual's capacity to meet personal, social, or occupational demands or statutory or regulatory requirements because of an impairment." Am. Med. Ass'n., <u>Guides to the Evaluation of Permanent Impairment</u> 8 (Linda Cocchiarella & Gunnar B.J. Andersson, 5th ed. 2000). Thus, Ihara argues:

> ... the fact of Employer's firing of Claimant because of his medical disqualification is precisely the type of "work" factor which must be considered by the LIRAB in determining "disability."
>
> The LIRAB's finding of fact of no impairment did not include consideration of "work", and the work prohibition provided a solid basis for a finding of PPD.

However, while the AMA Guides are a helpful tool in determining disability, the LIRAB is not bound by them. <u>See Cabatbat v. Cnty. of Haw., Dept. of Water Supply</u>, 103 Hawai'i 1, 6, 78 P.3d 756, 761 (2003). Additionally, Ihara's argument conflicts with the clear legislative intent outlined above that PPD should not be based on a claimant's ability to work.

If we accept that the LIRAB found that Ihara suffered some impairment, but not in a ratable amount, its award of PPD benefits would still be in error. As the LIRAB accepted that Ihara suffered no ratable impairment, it had no basis for calculating compensation under the statute. HRS § 386-32(a) in essence provides that, when a disability is not comparable to a scheduled disability, "the permanent partial disability *must* be rated as a percentage of the total loss or impairment . . . ." (Emphasis added.) Here, Ihara's disabilities were not comparable to any scheduled disability. Therefore, they were disabilities which *must* have been rated as a percentage of the total loss or impairment. Further, HRS § 386-32(a) then commands that "the maximum compensation *shall* be computed on the basis of the corresponding percentage of the product of three hundred twelve times the effective maximum weekly benefit rate prescribed in section 386-31." (Emphasis added.) As the LIRAB failed to do this, its award of $250 is not based on any calculation authorized by the statute.

Thus, whether the LIRAB found that Ihara was not impaired at all or that he was impaired in some undetermined amount, its award of PPD benefits was clearly wrong. Under HRS § 91-14(g) (2012), we thus vacate and remand the LIRAB's award of $250 in PPD benefits for a determination of whether Ihara suffered a permanent impairment, and if so, the percentage of the impairment and the award of PPD benefits based on that percentage.

B.    VR Services

HRS § 386-25(b) (Supp. 2014) provides that the director may refer employees to VR "who may have or have suffered permanent disability . . . ." The DLNR challenges COLs 5 and 6 which conclude that Ihara is entitled to VR services after October 20, 2008 and through at least August 17, 2009. These COLs are predicated on the conclusion that the DLNR's termination of Ihara for medical disqualification was an acknowledgment that he was permanently disabled. As discussed above, this conclusion was based on an erroneous interpretation of the law. Thus, we also vacate and remand the LIRAB's determination of Ihara's entitlement to VR services for a redetermination consistent with its final decision on the PPD issue. See Arruda v. Willocks Const. Corp., No. CAAP-12-0000391, 2013 WL 6043902 at *5 (Haw. App. Nov. 15, 2013) (MOP) ("We cannot conceive of a scenario in which entitlement to vocational rehabilitation services can be resolved without addressing the issue of permanent disability.")

C.    Request for a Penalty

On cross-appeal, Ihara challenges the LIRAB's FOF 32 which says "The Board finds no credible evidence to support an assessment against Employer of a 20% penalty for untimely TTD benefit payments[,]" and its COL 3 concluding that the DLNR was not liable for a 20% penalty on TTD. "FOFs are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record." Igawa, 97 Hawai'i at 406, 38 P.3d at 574 (citations and brackets omitted). COL 3 is also reviewed under a clearly erroneous standard because its

conclusion that the DLNR is not liable for a penalty is a mixed question of fact and law dependent on the facts and circumstances of this particular case. <u>Kauai Springs, Inc. v. Planning Comm'n of Kauai</u>, 133 Hawai'i 141, 164, 324 P.3d 951, 974 (2014). Here however, Ihara fails to cite to any evidence in the record which indicates that the LIRAB's FOF 32 or COL 3 were clearly erroneous.

> HRS § 386-92 (Supp. 2014) provides:
>
> If any compensation payable under the terms of a final decision or judgment is not paid by a self-insured employer or an insurance carrier within thirty-one days after it becomes due, as provided by the final decision or judgment, or if any temporary total disability benefits are not paid by the employer or carrier within ten days . . . after the employer or carrier has been notified of the disability, and where the right to benefits are not controverted in the employer's initial report of industrial injury or where temporary total disability benefits are terminated in violation of section 386-31, <u>there shall be added to the unpaid compensation an amount equal to twenty per cent thereof payable at the same time as, but in addition to, the compensation</u>, unless the nonpayment is excused by the director after a showing by the employer or insurance carrier that the payment of the compensation could not be made on the date prescribed therefor owing to the conditions over which the employer or carrier had no control.

(Emphasis added.) In the present case, the DLNR controverted Ihara's entitlement to the subject benefits in its initial report of the injury and there was no finding that the DLNR stopped TTD payments in violation of HRS § 386-31. Thus, under HRS § 386-92, the 20% penalty could only be imposed if the DLNR failed to make any compensation payable under the terms of a final decision or judgment.

Also, payments authorized by the DLIR's supplemental decision could not be considered overdue as the LIRAB granted a Motion for Stay of Payments following that decision. The record reflects that the DLNR paid the $12,614.40 in TTD benefits awarded by the DLIR's May 7, 2008 Decision. Ihara has not pointed to evidence that these payments were untimely and does not appear to argue that the DLNR failed to pay additional TTD benefits "upon receipt of medical certification" as ordered by the May 7, 2008 Decision. Ihara's only argument seems to be that payment for VR-TTD benefits should have been paid automatically

pursuant to the DLIR's May 7, 2008 determination that Ihara remained eligible for VR services. However, by its terms, the May 7, 2008 Decision did not order VR-TTD payments, which supports the LIRAB's FOF 32 that there was insufficient evidence to order a 20% penalty, and which also supports COL 3 that the DLNR was not liable for such a penalty. Thus, the LIRAB did not clearly err in its FOF 32 or COL 3.

D.     Attorney's Fees

On cross-appeal, Ihara challenges the LIRAB's Attorney's Fee Approval and Order. He argues that while "the 'crucial issue' was correctly found by the LIRAB to be whether Claimant was entitled to permanent partial disability . . . , the LIRAB erred in holding that the Employer was the prevailing party." However, as we are remanding the PPD issue, it is not yet possible to make a determination as to who is the prevailing party. "In light of [our] remand, the LIRAB has yet to make a final Decision on the underlying worker's compensation claim. As such, any determination whether the employer 'loses' and, thus, is required to pay attorney's fees and costs is premature, i.e. not ripe." Kapuwai v. City and Cnty. of Honolulu, Dep't. of Parks and Recreation, 121 Hawai'i 33, 41, 211 P.3d 750, 758 (2009). Thus, we must decline to address this issue and vacate and remand to the LIRAB to make a determination of attorney's fees pursuant to its final Decision.

V.     CONCLUSION

For the foregoing reasons, we vacate the LIRAB's March 13, 2012 Decision as to its award of $250 in PPD benefits in COL 4 and its determination that Ihara is entitled to VR services in COLs 5 and 6, and remand for proceedings consistent with this order. We also vacate the LIRAB's April 23, 2012 Attorney's Fee

Approval and Order and remand for proceedings consistent with this order.

DATED: Honolulu, Hawai'i, October 30, 2015.

On the briefs:

Scott G. Leong
Shawn L.M. Benton
(Leong Kunihiro Lezy &
 Benton)
for Employer-Appellant,
Cross-Appellee, Self-Insured

Wayne H. Mukaida
for Claimant-Appellee,
Cross-Appellant

Presiding Judge

Associate Judge

Acting Associate Judge